United States District Court
Middle District of Florida
Jacksonville Division

FUZION VAPOR, LLC,

       *Plaintiff,*

V.                                    **NO. 3:16-CV-942-J-34PDB**

FUMIZER, LLC,

       *Defendant.*

---

# Report & Recommendation

Fuzion Vapor, LLC (the plaintiff), and Fumizer, LLC (the defendant), are both in the e-cigarette market. Alleging Fumizer has been unfairly using marks confusingly similar to its own, Fuzion brings this action under state and federal law. Doc. 1. Because Fumizer has not appeared despite service, Fuzion moves for default judgment under Federal Rule of Civil Procedure 55(b)(2). Doc. 12 at 1–4 (motion); Doc. 12 at 5–10 (declaration of Elizabeth G. Borland, Esquire); Doc. 12 at 11–15 (cease-and-desist letter); Doc. 12 at 16–57 (screenshots of online marketing); Doc. 12 at 58–61 (firm billing records); Doc. 12 at 62–70 (proposed order); Doc. 13 (memorandum of law).[1] Fuzion requests default judgment on all but one cause of action, a permanent injunction, $17,836 in attorney's fees, and $692.61 in costs.

---

[1] For future filings, counsel is reminded Local Rule 3.01(a) requires a motion and memorandum to be in a single document and United States District Court, Middle District of Florida, Administrative Procedures for Electronic Filing, § IV.A.4, provides no proposed order may be submitted unless authorized by the assigned judge.

## I.   Background

### A.   *Complaint & Exhibits*

Through the complaint and its exhibits, Fuzion alleges the following facts.

Fuzion is a Florida limited liability company with its principal place of business in St. Augustine, Florida. Doc. 1 ¶ 2. Fumizer is a California limited liability company with its principal place of business in Los Angeles, California. Doc. 1 ¶ 3.

Fuzion owns the FUZION VAPOR mark for "juice made of chemical flavorings in liquid form for use in electronic cigarette cartridges featuring food grade flavoring, propylene glycol, vegetable glycerin, and optional nicotine" and for "retail store services and online retail store services featuring flavored juices for electronic cigarettes and personal vaporizers." Doc. 1 ¶ 9. Fuzion owns the FV design mark and uses it for those products and services:



Doc. 1 ¶ 10. Fuzion owns registrations of both marks (U.S. Registration Nos. 4,532,189 for FUZION VAPOR and 4,542,309 for FV). Doc. 1 ¶ 11. Both are maintained on the Principal Register of the United States Patent and Trademark Office, and both are attached to the complaint. Doc. 1 ¶ 11; Docs. 1-1, 1-2.

Since at least 2012, Fuzion has continuously and exclusively used the marks for its products and services, including on its website (www.fuzionvapor.com), on social media (including on Facebook and Instagram), and in other ways. Doc. 1 ¶¶ 12–14; *see* Docs. 1-3, 1-4, 1-5.

Since 2012, using its marks, Fuzion has spent nearly $600,000 to advertise and promote its products and services throughout the United States. Doc. 1 ¶ 15. Its marks thus "have become well known and widely accepted and respected by the consuming public and in the trade," and they "symbolize extremely valuable goodwill" evidenced by gross sales of about $13 million since 2012. Doc. 1 ¶ 15.

Fumizer markets and sells products to retailers and customers in Florida and throughout the United States. Doc. 1 ¶¶ 5, 7. Knowing Fuzion's rights and marks, Fumizer has adopted and used marks to identify e-liquids, personal vaporizers, and online retail store services for e-liquids and personal vaporizers. Doc. 1 ¶¶ 16–17. Fumizer uses marks that include FUMI VAPOR, FUMIVAPOR, and FV; the trade name "Fumi Vapor"; the domain name "fumivapor.com"; and this FV design mark:



Doc. 1 ¶¶ 16–17. Fumizer has used the marks in advertisements, on its website, and on social media (including Facebook and Instagram). Doc. 1 ¶¶ 17–19; *see* Docs. 1-6, 1-7, 1-8.

Fumizer has adopted and used the marks to identify its products and services to trade on Fuzion's goodwill and reputation, to capitalize on Fuzion's financial investments in advertising and promoting Fuzion's products and services, and to mislead purchasers into believing Fumizer's products and services are legitimately connected with, affiliated with, sponsored by, or approved by, Fuzion. Doc. 1 ¶ 20.

In July 2015 and January 2016, Fuzion's counsel sent letters to Fumizer notifying it of Fuzion's "exclusive rights" in its FV design mark and demanding that it "discontinue and refrain from its infringing, unfair, and improper conduct." Doc. 1 ¶ 23. Fumizer did not respond and continued to use the marks, trade name, and domain name to identify and promote its products and services. Doc. 1 ¶¶ 24–25.

3

The complaint sets forth five claims: infringement in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (count one), unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (count two), common law infringement (count three), common law unfair competition (count four), and dilution under Fla. Stat. § 495.151 (count five). Doc. 1 ¶¶ 27–47. The complaint includes a "prayer for relief" requesting a permanent injunction, treble damages, exemplary damages, punitive damages, attorney's fees, and costs. Doc. 1 at 11–13.

## B.   *Procedural History*

All events occurred in 2016. On July 22, Fuzion filed the complaint. Doc. 1. On July 29, this Court entered a notice it is satisfied it has subject-matter jurisdiction. Doc. 5. On September 16, Fuzion filed a return of service in which a process server declares under penalty of perjury that, on September 12, he served Fumizer by leaving the summons and complaint with Mike Fumi (a manager at Fumizer's office who was at least 18 and "apparently in charge at the office"), informing him of the nature of the documents, and mailing a copy of the documents to Fumizer's office. Doc. 7. On October 5, Fuzion moved for the entry of default. Doc. 8. On October 11, the clerk entered default. Doc. 9. On October 25, Fuzion filed the motion for default judgment, Doc. 12, and memorandum of law, Doc. 13, now before the Court. Fumizer has never appeared.[2]

---

[2]Fuzion's counsel includes certificates of service with the motion for default judgment and memorandum of law but appears to have used the wrong zip code for the address for Fumizer. *Compare* Doc. 7 (return of service using 91605), and United States Postal Service, "Look Up a ZIP Code," www.usps.com (indicating 91605 is used for the address), *with* Doc. 12 at 4 (certificate of service in motion using 92605), and Doc. 13 at 17 (certificate of service in memorandum using 92605). Federal Rule of Civil Procedure 5(a) provides that unless the rules provide otherwise, a written motion must be served on every party except "[n]o service is required on a party who is in default for failing to appear." Rule 55(b)(2) provides "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application." Because Fumizer has not appeared, any error in service should not preclude relief. In any event, a copy of this report and recommendation will be mailed to the correct address, giving Fumizer an opportunity to

### C.   *Motion for Default Judgment, Exhibits, & Memorandum of Law*

Fuzion seeks default judgment only on the federal and state infringement and unfair-competition claims and agrees, if it obtains default judgment on those, to abandon its dilution claim and waive any claim for damages.[3] Doc. 12 at 1; Doc. 13 at 1, 6–7 & n.3.

In the proposed order, Fuzion includes these terms for the permanent injunction:

(a)   Effective immediately, Defendant, its affiliated entities, servants, agents, representatives, employees, agents, and successors, and all other persons in active concert or participation with any or all of them, are ENJOINED and RESTRAINED from the following acts:

   (1)   Using, in advertisement, promotion, merchandising, distribution, offering for sale, and sale of E-Cigarette Products and Services and any products or services relating to electronic cigarettes or their use, the Infringing Marks, Trade Name, and Domain Name, and/or any other colorable imitation of Plaintiff's Marks;

   (2)   Expressly or impliedly representing to customers, potential customers, or the public that any E-Cigarette Products and Services or other products or services related to electronic cigarettes or their use are affiliated in any way with Plaintiff;

   (3)   Representing by words or conduct that Defendant's E-Cigarette Products and Services or any products

---

file any objections or make any arguments on why default judgment would be inappropriate.

   [3]Fuzion also states it agrees to abandon its claim for deceptive trade practices under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–213, which Fuzion identifies as count six. Doc. 13 at 7 n.3. That appears to be an error; the complaint contains no count six and references the Act only in an introductory paragraph. *See generally* Doc. 1.

or services relating to electronic cigarettes or their use, are authorized by, sponsored by, endorsed by, or otherwise connected with Plaintiff;

(4)  Doing any other acts calculated, or likely, to cause confusion or mistake in the mind of the public or to lead consumers into the belief that Defendant's E-Cigarette Products and Services and any other products or services relating to electronic cigarettes or their use are authorized, sponsored, licensed, endorsed, or promoted by Plaintiff, or are otherwise affiliated or connected with Plaintiff;

(5)  Otherwise infringing Plaintiff's Marks;

(6)  Diluting Plaintiff's Marks; and

(7)  Competing unfairly with Plaintiff in any manner;

(b)  Defendant is ordered to cancel the domain name "fumivapor.com" and any other domain names owned or controlled by Defendant that are confusingly similar to Plaintiff's Marks.

Doc. 12 at 68−69; *see also* Doc. 13 at 12 (requesting issuance of injunction as stated in proposed order).

In her declaration to support Fuzion's request for an award of $17,836 in attorney's fees and $692.61 in costs, Elizabeth G. Borland, Esquire, declares under penalty of perjury the following facts are true.

In 2015, Fuzion discovered that Fumizer was using a confusingly similar mark for the same types of products and services. Doc. 12 at 6. In June 2015 and January 2016, Fuzion—through its previous counsel—sent letters to Fumizer notifying Fumizer of Fuzion's trademark rights and demanding that Fumizer cease and desist. Doc. 12 at 6−7. Fumizer did not respond and continued to use the allegedly infringing marks. Doc. 12 at 7.

Fuzion initially delayed serving the complaint. Doc. 12 at 7. In late July 2016, Ms. Borland, at Fuzion's request, sent Fumizer a courtesy copy of the complaint and

6

a proposal for resolving the dispute (Fuzion would agree to not pursue the action if Fumizer would agree to discontinue use of the allegedly infringing marks and related terms). Doc. 12 at 7, 11−15. Fumizer did not respond and, as of the filing of the motion for default judgment, continued to use the allegedly infringing marks, including on its fumivapor.com website, Facebook page, and Instagram page. Doc. 12 at 7, 16−57.

Ms. Borland is a partner with Smith, Gambrell & Russell, LLP, based in the firm's Atlanta office. Doc. 12 at 6. She received her law degree from Emory University in 1991 and then served for two years as a law clerk for a United States District Judge. Doc. 12 at 7. She has been practicing law for 23 years and a member of the State Bar of Georgia for slightly longer. Doc. 12 at 8. She focuses on intellectual property litigation and helps clients maintain "intellectual property portfolios." Doc. 12 at 8. She is familiar with rates charged by other firms of similar size and with similar practices in Atlanta and Jacksonville. Doc. 12 at 9. The firm's hourly rates are lower than rates for similar services by similar attorneys in Atlanta. Doc. 12 at 9.

James McCachren, III, Esquire, and Richard Rivera, Esquire, helped Ms. Borland with this action. Doc. 12 at 8. Mr. McCachren is a partner with the firm, Mr. Rivera is an associate with the firm, and both are based in the firm's Jacksonville office. Doc. 12 at 8. Mr. McCachren received his law degree from the University of Florida in 1993 and has been practicing law for 23 years. Doc. 12 at 8. He focuses on complex commercial litigation, including intellectual property litigation. Doc. 12 at 8. Mr. Rivera received his law degree from Florida State University in 2013 and has been practicing law for almost four years. Doc. 12 at 8. He focuses on commercial litigation and intellectual property. Doc. 12 at 8. Both Mr. McCachren and Mr. Rivera are admitted to practice before this Court. Doc. 12 at 8.

For this action, the attorneys prepared and filed the complaint and supporting documents, prepared the post-complaint letter and settlement proposal, obtained the clerk's entry of default, and prepared and filed the motion for entry of default judgment and supporting documents. Doc. 12 at 9; *see* Docs. 1, 8, 12, 13. Ms. Borland

certifies "the work performed was reasonably necessary for prosecuting" the claims. Doc. 12 at 10.

For this action, Ms. Borland's and Mr. McCachren's hourly rate is $470, and Mr. Rivera's hourly rate is $265. Doc. 12 at 15. As reflected in the billing records that Ms. Borland reviewed and attached to her declaration, she spent 29.9 hours on the action; Mr. McCachren, 3.2; and Mr. Rivera, 8. Doc. 12 at 8, 59−61. Fuzion has incurred $17,836 in fees, and the firm has charged or will charge Fuzion those fees. Doc. 12 at 10. Ms. Borland opines the rates "are within the range of hourly rates charged for the services of attorneys and paralegals with the same level of experience in the Jacksonville community." Doc. 12 at 9. Fuzion argues that "to the extent [Ms. Borland's] hourly rate could be considered a 'premium' rate, such rate is justified" because trademark litigation is a particularly difficult field of specialization, she has more than 20 years' experience in the field, and she is the attorney most familiar with Fuzion's trademark portfolio and the other facts. Doc. 13 at 14.

For this action, Fuzion has incurred costs of $692.61, comprising $18.86 for "Express Delivery Services," $550 for "Fees of the Clerk," and $123.75 for "Fees of the Marshal." Doc. 12 at 10. Ms. Borland opines the costs were "reasonable and necessary to this litigation." Doc. 12 at 10.

## II.   Law & Analysis

### A.   *Law Governing Default Judgment*

Before obtaining default judgment, a plaintiff must obtain entry of default by showing that the defendant has failed to plead or defend. Fed. R. Civ. P. 55(a). After entry of default, the court or clerk may enter default judgment. Fed. R. Civ. P. 55(b). If the complaint does not request a sum certain, the plaintiff must request default judgment from the court. Fed. R. Civ. P. 55(b)(2).

By defaulting, a defendant admits the complaint's well-pleaded factual allegations. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298,

8

1307 (11th Cir. 2009). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). If warranted, the court may conduct a hearing to conduct an accounting, determine the damages amount, establish with evidence the truth of any allegation, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

Default judgment is a "drastic remedy" that should be used only in "extreme situations." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316–17 (11th Cir. 2002). Before entering default judgment, a court should ensure it has subject-matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (courts have obligation to ensure subject-matter jurisdiction). The court should ensure the sufficiency of service of process. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void."). The court should ensure it has personal jurisdiction over the defendant. *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001); *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *see also Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017) ("A court must have … power over the parties before it (personal jurisdiction) before it can resolve a case."). And the court should ensure the well-pleaded factual allegations state a claim upon which relief may be granted. *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).

## B.  *Subject-Matter Jurisdiction*

A district court has original subject-matter jurisdiction over federal claims, 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim if (1) "the claim raises a novel or complex issue

of State law," (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) "the district court has dismissed all claims over which it has original jurisdiction," or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Here, the Court has subject-matter jurisdiction over the Lanham Act claims because they are federal claims. There is no reason to decline to exercise supplemental jurisdiction over the state common law claims because they mirror the federal claims. As determined, *see* Doc. 5 (Court's notice it is satisfied it has subject-matter jurisdiction), the Court has subject-matter jurisdiction.

## C.     *Service of Process*

A plaintiff may serve an unincorporated association "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where … service is made" or by delivering copies of the summons and the complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(e)(1), (h)(1)(A), (h)(1)(B). In California, an unincorporated association may be served by delivering copies of the summons and the complaint to "a general manager." Cal. Code of Civ. P. § 416.40.

Here, the process server declared under penalty of perjury he delivered the summons and complaint to Mike Fumi—a manager of Fumizer—and mailed the summons and complaint to Fumizer, Doc. 7. Fuzion properly served process.

## D.     *Personal Jurisdiction*

Though a defendant may waive an objection to personal jurisdiction by not timely raising the objection, *Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988), a defendant does not waive the objection by accepting service

and failing to appear, *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 854–55 (11th Cir. 2010).

Serving a summons establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). A federal district court sitting in diversity has personal jurisdiction over a defendant if the forum state's long-arm statute is satisfied and the defendant has sufficient minimum contacts with the forum state to satisfy due process and comport with traditional notions of fair play and substantial justice. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214, 1220 (11th Cir. 1999).

Florida's long-arm statute provides for general and specific jurisdiction. Fla. Stat. §§ 48.193(1), (2); *see Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1779–80 (2017) (describing types of jurisdiction). Specific jurisdiction—the only type of jurisdiction that applies here—authorizes jurisdiction over a claim arising from or related to the defendant's actions with Florida only as those actions relate to the claim. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

Florida's long-arm statute provides that a nonresident defendant is subject to specific jurisdiction in Florida for, among other things, "any cause of action arising from … [c]ommitting a tortious act within this state." Fla. Stat § 48.193(1)(a)(2). A defendant commits a tortious act within Florida if he commits an act outside Florida that causes injury inside Florida. *Louis Vuitton*, 736 F.3d at 1353. Trademark infringement is a tortious act, and trademark infringement "on an internet website causes injury in Florida by virtue of the website's accessibility in Florida" when the owner of the mark resides in Florida even if the defendant resides and created the website elsewhere. *Id.* at 1354 (internal quotation marks omitted).

Satisfying Florida's long-arm statute does not automatically satisfy due-process requirements. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). Due process requires examination of whether the plaintiff's claims arise out of

or relate to at least one of the defendant's forum contacts, whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the state, and whether exercising personal jurisdiction comports with traditional notions of fair play and substantial justice. *Louis Vuitton*, 736 F. 3d at 1355. If the plaintiff establishes the defendant's contacts are related to a claim and the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, the burden shifts to the defendant to "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* at 1355 (internal quotation marks omitted). In determining whether exercising jurisdiction comports with fair play and substantial justice, a court considers the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the judicial system's interest in resolving the dispute. *Id.* at 1358. Of those, the burden on the defendant is the most important. *Bristol-Myers*, 137 S. Ct. at 1780. The due process analysis focuses on the defendant's contact with the state itself, not its contact with those who reside in the state. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

The Eleventh Circuit has applied those principles in cases that are factually analogous to the facts here. In *Louis Vuitton*, the Eleventh Circuit held the United States District Court for the Southern District of Florida had personal jurisdiction in a trademark-infringement case over a defendant residing in New York. 736 F.3d at 1354. The plaintiff alleged the defendant had marketed and sold counterfeit and trademark-infringing products to consumers in the district through websites operated from New York. *Id.* at 1343, 1345. The plaintiff also presented evidence that an investigator had bought an infringing product through one of the websites and received it in Florida. *Id.* at 1348–49.

In *Licciardello v. Lovelady*, the Eleventh Circuit held the United States District Court for the Middle District of Florida had personal jurisdiction over a defendant (a former manager of the plaintiff residing in Tennessee) who the plaintiff (a nationally known musician residing in Florida) alleged had used his trademarked

12

name and photograph on a website operated from Tennessee but accessible in Florida. 544 F.3d 1280, 1282–84 (11th Cir. 2008).[4]

Accepting as true Fuzion's allegations that Fumizer purposefully markets and sells products to retailers in Florida using the infringing marks, including through a website and social media accessible in Florida, Doc. 1 ¶¶ 5, 7, 16–20, Fuzion has established Fumizer's contacts with Florida relate to its claims and Fumizer has purposefully availed itself of the privilege of conducting activities within Florida. By failing to appear, Fumizer has not made any case—much less a compelling one—that the exercise of jurisdiction over it would violate traditional notions of fair play and substantial justice. The Court has personal jurisdiction over Fumizer.

### E.    *Established Claims*

"A 'trademark' is … any word, name, symbol, or device or any combination thereof used by any person to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source [is] unknown." *Univ. of Fla. v. KPB, Inc.*, 89 F.3d 773, 776 n.4 (11th Cir. 1996) (internal quotation marks omitted).[5] A defendant is liable for

---

[4]The Supreme Court addressed personal jurisdiction in several cases since *Louis Vuitton* and *Lovelady*; none undermine the holdings in *Louis Vuitton* and *Lovelady*. *See Bristol-Myers*, 137 S. Ct. at 1781–84 (holding California state court did not have specific jurisdiction over defendant with respect to nonresidents' claims because no acts relating to the claims occurred in California); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1555–60 (2017) (holding § 56 of Federal Employers' Liability Act did not address personal jurisdiction over railroads, and Montana state court lacked general jurisdiction over defendant railroad because it was not incorporated there, did not have its principal place of business there, and was not otherwise "essentially at home" there); *Walden v. Fiore*, 134 S. Ct. 1115, 1124–26 (2014) (holding Nevada federal court lacked specific jurisdiction over defendant in suit alleging he had seized plaintiffs' money at a Georgia airport and helped draft false probable-cause affidavit forwarded to U.S. Attorney's Office in Georgia); *Daimler AG v. Bauman*, 134 S. Ct. 746, 758–63 (2014) (holding corporate defendant's subsidiary's substantial contacts with California, even if attributable to defendant, were not enough to render defendant "essentially at home" there for the exercise of general jurisdiction).

[5]"A 'service mark' is identical to a trademark in all respects except that it is intended to indicate the origin of services, rather than goods." *Univ. of Fla.*, 89 F.3d at

trademark infringement under the Lanham Act if, without consent, the defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" that "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1).

To establish trademark infringement, a plaintiff must "demonstrate (1) that its marks had priority over [the defendant]'s marks, and (2) that [the defendant]'s marks were likely to cause consumer confusion." *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016).

A defendant is liable for unfair competition in violation of the Lanham Act if it uses a mark that "is likely to cause confusion, or to cause mistake, or to deceive" on the origin of a product or service. 15 U.S.C. § 1125(a)(1)(A). To establish unfair competition based on trademark infringement, a plaintiff "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Fla. Int'l Univ.*, 830 F.3d at 1265. In determining whether a likelihood of confusion exists to evaluate an unfair-competition claim, a court considers the same factors considered in the context of trademark infringement. *Tana v. Dantanna's*, 611 F.3d 767, 773 n.5 (11th Cir. 2010). "While nearly identical to the likelihood-of-confusion standard … for federal trademark infringement claims, [§ 1125(a)] is broader in that it covers false advertising or description whether or not it involves trademark infringement." *Fla. Int'l Univ.*, 830 F.3d at 1265. As a practical matter, "[t]he same set of facts enabling [a plaintiff] to prevail under [§ 1114(1)] will result in recovery pursuant to [§] 1125." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994).

---

776 n.4. "The analysis is the same for service mark and trademark infringement." *Tana v. Dantanna's*, 611 F.3d 767, 772 n.3 (11th Cir. 2010).

    Here, because the parties use their marks in association with both goods and services, they are both trademarks and service marks. *See* 15 U.S.C. § 1127 (defining trademark and service mark).

The same standard also applies in evaluating trademark-infringement and unfair-competition claims under Florida common law. *See Anderson v. Upper Keys Bus. Grp., Inc.*, 61 So. 3d 1162, 1167 (Fla. 3d DCA 2011) (stating plaintiff's "unfair competition claim is premised on common law and state and federal statutes, which all apply the same standards"; citing standard under § 1114(1)(a)); *see also Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) ("Courts may use an analysis of federal infringement claims as a measuring stick in evaluating the merits of state law claims of unfair competition." (internal quotation marks omitted); *Escot Bus Lines, LLC v. Fla. Express Bus, LLC*, No. 8:15-cv-2439-T-36TGW, 2017 WL 1005954, at *3 (M.D. Fla. Mar. 15, 2017) (unpublished) ("[W]ithin the Eleventh Circuit, courts conduct the same analysis when evaluating federal statutory and state common law trademark infringement claims."); *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 151 F. Supp. 3d 1268, 1278 (M.D. Fla. 2015) (citing *Suntree*; stating "the analysis for unfair competition and trademark infringement under the Lanham Act …, the Florida Deceptive and Unfair Trade Practices Act …, and Florida common law … is the same" (internal alterations added)).

Through the deemed-admitted factual allegations in the complaint, Fuzion has demonstrated that its marks had priority over Fumizer's marks and Fumizer's marks were likely to cause customer confusion. *See Fla. Int'l Univ.*, 830 F.3d at 1255.

On the first requirement, "[r]ights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users." *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 909 (2015). The Eleventh Circuit "uses a two-part test to determine whether a party has demonstrated prior use of a mark in commerce: evidence showing, first, adoption, and second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1081 (11th Cir. 2016) (quoted authority and alteration omitted). "The typical evidence of use in commerce is the sale of goods bearing the mark. However, in the absence of actual sales,

advertising, publicity, and solicitation can sufficiently meet the public identification prong of the test." *Id.* (internal citations omitted).

By defaulting, Fumizer admits Fuzion has owned registrations for FUZION VAPOR and FV; since at least as early as 2012, Fuzion has continuously and exclusively used the marks "for flavored juices for use in … E-Liquids … and retail store and on-line store services for E-Liquids and personal vaporizers"; Fuzion "promotes its products and services on various social media, including Facebook and Instagram"; Fuzion "has spent nearly … $600,000 … to advertise and promote throughout the United States E-Liquids and retail and online store services for E-Liquids and personal vaporizers under" its marks; Fuzion's marks "have become well known and widely accepted and respected by the consuming public and in the trade"; and Fumizer adopted its marks "with knowledge" of Fuzion's rights in and to Fuzion's marks. Doc. 1 ¶¶ 11–17. Through those admissions, Fuzion has demonstrated that its marks had priority over Fumizer's marks.

On the second requirement, in determining whether a likelihood of confusion exists, courts consider: "(1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public." *Fla. Int'l Univ.,* 830 F.3d at 1255. Of those, the strength of the allegedly infringed mark and actual confusion are the most important, *id.*, though "a likelihood of confusion can be found as a matter of law if the defendant intended to derive a benefit from the plaintiff's trademark," *Babbit Elecs.,* 38 F.3d at 1179.

Assessing the strength of the allegedly infringed mark (the first factor) requires (1) classifying the mark as "generic," "descriptive," "suggestive," or "arbitrary" "based on the relationship between the mark and the service or good it

describes" and (2) considering "the degree to which third parties make use of the mark." *Fla. Int'l Univ.*, 830 F.3d at 1256–57.

> Generic marks are the weakest and are not entitled to protection—they refer to a class of which an individual product is a member (for example, "liquor store" used in connection with the sale of liquor). Descriptive marks describe a characteristic or quality of an article or service (for example, "vision center" denoting a place where glasses are sold). Suggestive marks suggest characteristics of the goods and services and require imaginative effort by the consumer in order to be understood as descriptive (such as "penguin" being applied to refrigerators). Finally, arbitrary marks—the strongest of the four categories—bear no relationship to the product (e.g., "Sun Bank" is arbitrary when applied to banking services).

*Id.*

Fuzion does not address either the category to which its marks belong or the extent of third-party use of its marks. *See generally* Docs. 12, 13. The FUZION VAPOR mark is at least suggestive. Use of an alternate spelling of "fusion" does not obviously describe any aspect of Fuzion's products and services, but with exercise of some imagination, a consumer might understand the word to describe the blending of ingredients to create Fuzion's e-liquids. *See* Doc. 1 ¶ 9 (describing Fuzion's e-liquids as "juice made of chemical flavorings in liquid form … featuring food grade flavoring, propylene glycol, vegetable glycerin, and optional nicotine"). The FV design mark is at least suggestive, as the image—a curved letter F within the letter V—does not obviously describe any aspect of Fuzion's products and services, but with exercise of some imagination, a consumer might understand the "V" to stand for vapor because the "F" appears to look like smoke or vapors. *See* Doc. 1 ¶ 10. The complaint does not allege of the extent of third-party use of Fuzion's marks, so the Court cannot evaluate that component of the strength of the mark. Because Fuzion's marks are at least in the second strongest category, the first factor supports a finding of a likelihood of confusion.

Similarity of the infringed and infringing marks (the second factor) is determined by "the overall impression created by the marks, including a comparison

of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed." *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 939 (11th Cir. 2010) (quoted authority omitted). Fuzion's FV design mark and Fumizer's FV design mark are similar; both involve the letter F within the letter V, and Fumizer's mark could reasonably be viewed as a variant of Fuzion's:

 

*Compare* Doc. 1 ¶ 10 *with* Doc. 1 ¶ 16. Fuzion's FUZION VAPOR mark and Fumizer's FUMI VAPOR mark (and its variants, the FUMIVAPOR and FV marks, the "Fumi Vapor" trade name, and fumivapor.com), are less similar than the design marks, but they share the initials FV, and the words have similar sounds. By defaulting, Fumizer has admitted it adopted all of its marks intending to trade on Fuzion's goodwill and mislead consumers into believing its products and services are affiliated with Fuzion, and its marks are likely to cause confusion on the source and origin of its products and services. *See* Doc. 1 ¶¶ 20–22. By admitting it adopted its marks intending to cause consumers to believe its products are affiliated with Fuzion, it admits facts warranting a plausible inference that the marks are similar enough to Fuzion's to create that association. The second factor supports a finding of a likelihood of confusion.

Analyzing the similarity of the goods and services the marks represent (the third factor) "requires a determination as to whether the products are the kind that the public attributes to a single source, not whether … the purchasing public can readily distinguish between the products of the respective parties." *Caliber*, 605 F.3d at 939–40 (quoted authority omitted). By defaulting, Fumizer admits Fuzion uses its marks for "juice made of chemical flavorings in liquid form for use in electronic cigarette cartridges … and retail store services and online retail store services featuring flavored juices for electronic cigarettes and personal vaporizers"; and

Fumizer uses its marks for "E-Liquids, personal vaporizers, and online retail store services for E-Liquids and personal vaporizers." Doc. 1 ¶¶ 9, 16. Because the goods and services are the same or nearly the same, the third factor supports a finding of a likelihood of confusion.

The similarity of the parties' trade channels and customers (the fourth factor) "takes into consideration where, how, and to whom the parties' products are sold." *Caliber*, 605 F.3d at 940 (quoted authority omitted). By defaulting, Fumizer admits it markets its products and services intending to capitalize on Fuzion's goodwill and mislead consumers into believing Fuzion is affiliated with its products. Doc. 1 ¶¶ 9, 12, 15–17, 20–22. That admission supports an inference the parties have and pursue the same customers (users of e-cigarettes and vaporizers) such that the fourth factor supports a likelihood of confusion.

The similarity of advertising media (the fifth factor) "looks to each party's method of advertising." *Caliber*, 605 F.3d at 940 (quoted authority omitted). By defaulting, Fumizer admits it and Fuzion both promote their products and services on websites and social media, including Facebook and Instagram. Doc. 1 ¶¶ 14, 19. The fifth factor supports a likelihood of confusion.

For the sixth factor, a court "must determine whether the defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation." *Caliber*, 605 F.3d at 940 (internal quotation marks omitted). By defaulting, Fumizer admits it adopted its marks intending to trade on Fuzion's good will and reputation, capitalize on Fuzion's investments in promoting its own products and services, and mislead consumers into believing its products and services were affiliated with Fuzion. Doc. 1 ¶¶ 20–21. It also admits it did not respond to Fuzion's counsel's letters notifying it of the alleged infringement and has continued to use its marks in bad faith. Doc. 1 ¶¶ 23–26. Its intent alone permits finding a likelihood of confusion. *See Babbit Elecs.*, 38 F.3d at 1179.

19

For the existence and extent of actual confusion in the consuming public (the seventh factor), Fuzion alleges no instances of actual customer confusion.

The balance of the factors supports finding a likelihood of confusion. Most factors either strongly support the finding (the strength of Fuzion's marks; the similarity of the parties' FV design marks; the similarity of the parties' products and services, customers, and advertising media; and Fumizer's intent to misappropriate Fuzion's goodwill) or somewhat support it (the similarity of the FUZION VAPOR and FUMI VAPOR marks and their variants). The sole factor with no facts supporting it is the existence and extent of actual confusion in the consuming public. Because a balancing is used, the absence of facts supporting that factor does not preclude finding a likelihood of confusion.

Having established the priority of its own marks and a likelihood of confusion with Fumizer's marks, Fuzion is entitled to default judgment on its federal and state trademark-infringement and unfair-competition claims.

## F.  *Injunctive Relief*

Section 1116 of Title 15 of the United States Code provides:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title.

15 U.S.C. § 1116(a). "[I]n ordinary trademark infringement actions[,] complete injunctions against the infringing party are the order of the day." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008) (alteration

omitted). "The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks." *Id.*[6]

To obtain a permanent injunction, a plaintiff must show: (1) "it has suffered an irreparable injury"; (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) "the public interest would not be disserved by a permanent injunction." *Id.* at 1208. If granted, a court must "ensure that the scope of the awarded relief does not exceed the identified harm." *Thomas v. Bryant*, 614 F.3d 1288, 1317–18 (11th Cir. 2010).[7] "[L]oss of control of reputation, loss of trade, … loss of goodwill[, and] the possibility of confusion" can constitute irreparable injury. *Ferrellgas Partners, L.P. v. Barrow,*

---

[6]A plaintiff also may obtain injunctive relief for common-law unfair competition based on trademark infringement. *Anderson*, 61 So. 3d at 1167–68.

[7]The Eleventh Circuit has presumed irreparable harm and no adequate remedy at law when a plaintiff establishes a likelihood of success (for a preliminary injunction) or actual success (for a permanent injunction) on a trademark-infringement claim. *See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989). In 2006, the Supreme Court held in a case under the Patent Act (which contains language similar to that in the Lanham Act concerning injunctive relief) that the traditional four-factor framework governing injunctive relief applied and that courts should not apply categorical rules for granting or denying such relief. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393–94 (2006). The Eleventh Circuit has not overruled its precedent permitting a presumption of irreparable harm and inadequate remedies at law in the trademark context and has declined to decide in a published decision whether such presumptions are "the equivalent of the categorical rules rejected by" the Supreme Court. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1216 (11th Cir. 2008). But it has extended the Supreme Court's rule to the copyright context. *See Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1323 (11th Cir. 2008) (citing *eBay*; "[A] permanent injunction does not automatically issue upon a finding of copyright infringement."). "In the wake of the Supreme Court's decision …, courts within the Eleventh Circuit vary widely in determining whether to presume irreparable injury upon finding a likelihood of confusion in a trademark case." *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1362 (S.D. Fla. 2016).

Here, the Court need not determine whether the presumption continues to apply. Fuzion does not argue a presumption exists, and reliance on any presumption is unnecessary to find injunctive relief warranted.

143 F. App'x 180, 190 (11th Cir. 2005) (internal quotation marks omitted). Determining whether an injunction in a trademark-infringement case is in the public interest requires "taking into account a number of things: the public's interest in not being confused, the public's interest in encouraging, not stifling, competition, and the broader economic implications of the grant of the preliminary injunction." *Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1281 (N.D. Fla. 2016) (internal quotation marks, citations, and alterations omitted).

Federal Rule of Civil Procedure 65(d)(1) provides: "Every order granting an injunction … must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." The "clear purpose" of the rule is to avoid "injunctions which do not set out fairly for the benefit of the enjoined party what conduct is forbidden." *Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 129 (5th Cir. 1973).

"An injunction is overly broad [if it] leaves parties open to the hazard of conducting business in the mistaken belief that it is not prohibited by the injunction and later finding themselves subject to punishment for contempt." *Id.* (internal quotation marks omitted). "It is, of course[,] well accepted that an injunction must be worded in such specific terms and with such detail as to put the party enjoined on notice of precisely what he is called upon to do or refrain from doing." *Id.* (internal quotation marks omitted). An injunction that "merely forbids a defendant from performing 'acts of unfair competition,' or from 'infringing on a plaintiff's trademarks and trade secrets' adds nothing to what the law already requires." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (11th Cir. 2001) (internal quotation marks and emphasis omitted).

On the first element (irreparable injury), by defaulting, Fumizer admits it continues to use its infringing marks to market and sell its products in Florida and elsewhere and it adopted the marks intending to trade on Fuzion's goodwill and lead

consumers to believe its products are associated with Fuzion, and the admitted allegations establish its marks are likely to cause consumer confusion. Doc. 1 ¶¶ 7, 20–26. And Fuzion has presented evidence that Fumizer has ignored its efforts to resolve the dispute and has continued to use the infringing marks. *See* Doc. 12 at 7. Fumizer's continued use of infringing marks means, absent an injunction, Fuzion would continue to be irreparably injured by a lack of control over its reputation.

On the second element (no adequate remedy at law), damages are inadequate if a defendant's continued use of infringing marks constrains the plaintiff's ability to control its reputation. *Edge Sys., LLC v. Aguila*, 186 F. Supp. 3d 1330, 1362 (S.D. Fla. 2016). Fumizer's continued use of the infringing marks, trade name, and domain name inhibits Fuzion's ability to control its reputation, and damages are inadequate to compensate for that harm.

On the third element (balance of hardships), because infringing is unlawful, a defendant suffers no cognizable hardship if prohibited from infringing on a plaintiff's marks. *Crossfit, Inc. v. Quinnie*, No. 1:15-cv-04080-WSD, 2017 WL 510896, at *13 (N.D. Ga. Feb. 8, 2017) (to be published); *Edge Sys.*, 186 F. Supp. 3d at 1362–63; *Venus Fashion, Inc. v. Tidebuy Int'l, Ltd.*, No. 3:14-cv-191-J-34JBT, 2015 WL 5915961, at *7 (M.D. Fla. Oct. 8, 2015) (unpublished). And any injury a "defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself." *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) (quoted). The balance of hardships favors Fuzion.

On the fourth element (the public interest), "the public deserves not to be led astray by the use of inevitably confusing marks." *See Angel Flight of Ga.*, 522 F.3d at 1209 (quoted). The public's interest in not being misled by confusingly similar marks outweighs any potential harm to competition, which Fumizer can mitigate by adopting a sufficiently distinct brand.

The elements favor a permanent injunction.

Most of the terms Fuzion proposes for the permanent injunction (set forth on pages 5 and 6 of this report and recommendation) are warranted. I recommend using language substantially similar to that in paragraphs (a)(1) through (a)(4) because the language is sufficiently specific and clear to target the conduct for which Fumizer is liable: using marks and names confusingly similar to Fuzion's marks. The language is similar to injunctions this Court has entered in other infringement cases. *See, e.g.*, *Venus Fashion*, 2015 WL 5915961, at *1 (enjoining defendant from "(a) infringing use of Plaintiff's VENUS Marks and variants thereof in any medium or avenue of commerce; [and] (b) using in its advertising or in furtherance of its commerce any trademark confusingly similar to Plaintiff's VENUS Marks and variants thereof"); *Ultratech Int'l, Inc. v. Res. Energy Grp., LLC*, No. 3:14-cv-12-J-34JBT, 2015 WL 1911322, at *1–2 (M.D. Fla. Apr. 27, 2015) (unpublished) (enjoining defendants "and their principals, agents, servants, employees, officers, attorneys, successors and assigns, and all persons, entities, firms, and corporations acting in privity, concert, or participation with them" from "representing that any products, merchandise or goods manufactured, distributed, sold, held for sale, or advertised by REG are sponsored, authorized by or related to UltraTech"; "engaging in any conduct that tends to falsely represent, or is likely to confuse, mislead, or deceive members of the purchasing public to believe that REG and any products sold or marketed for sale by REG are in some way connected, affiliated, sponsored, approved, or licensed by UltraTech"; "interfering with UltraTech's rights in, or use of, the 'Ultra' mark, including the name 'Ultra Ever Dry'"; or "infringing UltraTech's 'Ultra' or 'Ultra Ever Dry' mark or damaging UltraTech's business, reputation or goodwill").

I recommend declining to adopt paragraphs (a)(5) through (a)(7). They would enjoin Fumizer from infringing Fuzion's marks, diluting Fuzion's marks, and unfairly competing with Fuzion, with no other guidance. Such an instruction would run afoul of the specificity requirement in Rule 65, would leave Fumizer guessing whether any future conduct violated the injunction, and would "add[] nothing to what the law already requires." *See Planetary Motion*, 261 F.3d at 1203 (quoted). To the extent they add anything to the injunction not covered by the first four paragraphs, they would

go beyond enjoining the conduct for which Fumizer is liable because Fuzion alleges only that Fumizer infringed on and diluted its marks and unfairly competed by using the marks, trade name, and domain name.

I recommend directing Fumizer to cancel the fumivapor.com domain name. This Court has previously required defaulting defendants to transfer all rights to infringing domain names to plaintiffs. *See, e.g.*, *BBY Solutions, Inc. v. Livingstone*, No. 3:15-cv-1001-J-32JRK, 2016 WL 7668487, at *1 (M.D. Fla. May 20, 2016) (unpublished); *Venus Fashion*, 2015 WL 5915961, at *1, 8; *Ultratech*, 2015 WL 1911322, at *2, 10. Cancellation of the domain name at issue in this case will have the same effect. *Cf. Adidas*, 2014 WL 799132, at *8 (finding an order directing cancellation or transfer of domain names was a way "to eliminate the means by which Defendants are conducting their unlawful activities").

I recommend declining to direct Fumizer to cancel "any other domain names owned or controlled by Defendant that are confusingly similar to Plaintiff's marks." *See* Doc. 12 at 69 (quoted). As this Court has observed in other cases, the Court has no basis to order the transfer or cancellation of unspecified websites, particularly where Fuzion "has alleged no facts regarding any other specific websites." *See Ultratech*, 2015 WL 1911322, at *10 (quoted); *see also Venus Fashion*, 2015 WL 5915961, at *8 & n.11 (same). An injunction prohibiting use of the infringing marks or similar ones likely to cause confusion "is broad enough to prevent [the] [d]efendant[] from using any such websites in a manner that would harm" Fuzion. *See Ultratech*, 2015 WL 1911322, at *10 n.11 (quoted).

## G.   *Attorney's Fees*

In "exceptional cases," a court may award reasonable attorney's fees to a party who has prevailed on a claim for trademark infringement or unfair competition under the Lanham Act. 15 U.S.C. § 1117(a).

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court considered an identical fee-shifting provision in the Patent Act, 35 U.S.C. § 285, and held "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 134 S. Ct. 1749, 1756 (2014). The Court rejected as "overly rigid" the Federal Circuit's standard, under which a case was exceptional only "'when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraudulent or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed.R.Civ.P. 11, or like infractions.'" *Id.* at 1754, 1756 (quoting *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)). The Court concluded "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

Before *Octane Fitness*, the Eleventh Circuit had held a trademark-infringement case is "exceptional" and warrants an attorney's-fee award if "the infringing party acts in a malicious, fraudulent, deliberate, or willful manner." *Planetary Motion*, 261 F.3d at 1205. Citing the *Octane Fitness* standard as "more liberal," this Court and others have since applied it instead of the standard the Eleventh Circuit had previously articulated. *See, e.g.*, *Crossfit*, 2017 WL 510896, at *11; *CarMax Superstores, Inc. v. StarMax Fin., Inc.*, 192 F. Supp. 3d 1279, 1282–83 & n.1 (M.D. Fla. 2016) (citing cases).

Under either standard, this case is exceptional. By defaulting, Fumizer admits it intentionally uses marks confusingly similar to Fuzion's to trade on Fuzion's goodwill and cause the consuming public to believe its products and services are affiliated with Fuzion. Doc. 1 ¶¶ 20–21, 23–24, 26. Such willful infringement satisfies the Eleventh Circuit's standard. Fumizer also admits it ignored Fuzion's pre-suit efforts to resolve the dispute despite knowing its marks were confusingly similar to Fuzion's. Doc. 1 ¶¶ 23–25. And it has continued to use its marks even after defaulting.

Doc. 12 at 7. Those circumstances satisfy the *Octane Fitness* standard because they establish that Fuzion had a strong litigation position from the outset, and Fumizer has acted unreasonably in refusing to respond to Fuzion's communications and this action and continuing its infringing conduct. *See CarMax*, 192 F. Supp. 3d at 1283−84 (concluding the entry of default judgment does not automatically translate into a finding that a case is exceptional and finding *Octane Fitness* standard satisfied under circumstances similar to those here).

In *Hensley v. Eckerhart*, the Supreme Court set out the framework for evaluating the reasonableness of statutorily available attorney-fee awards. 461 U.S. 424, 433–37 (1983). The starting point for assessing reasonableness is a "lodestar" calculation, which is the number of hours reasonably spent multiplied by a reasonable hourly rate. *Id.* at 433. A court should exclude hours that were not "reasonably expended"; for example, hours that were "excessive, redundant, or otherwise unnecessary." *Id.* at 434.

The movant must produce evidence to support the hours worked and the rates claimed. *Id.* at 433. Sufficient evidence is more than just an affidavit of the attorney who performed the work. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). In assessing rates, a court may rely on its own experience. *Id.* at 1305. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* The relevant legal community is where the case is filed. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).

After determining the lodestar, a court must consider other relevant factors to determine whether to adjust the fee upward or downward, including the critical factor of "results obtained." *Hensley*, 461 U.S. at 434. But the Supreme Court has cautioned: "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee," and "an enhancement may not be awarded based on a

factor that is subsumed in the lodestar calculation." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (internal quotation marks omitted).

Based on my experience, the prevailing market rates in Jacksonville for similar services (standard practices in a routine infringement action in which the defendant fails to appear) by lawyers of reasonably comparable skills, experience, and reputation (highly skilled and highly experienced partners and a mid-level associate with four years' skill and experience, all with reputations presumably reflecting their skill and experience), are $425 for partners and $225 for associates. *Cf. Fine v. Baer*, No. 5:15-cv-21-Oc-28PRL, 2017 WL 1437461, at *7–8 (M.D. Fla. Apr. 5, 2017) (unpublished) (in Ocala (a smaller market in the district), recommending $350 hourly rate for lawyer with 30 years' experience, board certification, and exceptional ratings (see Doc. 61 in *Fine*) in "routine copyright infringement case, without novel or difficult issues"); *BBY Solutions, Inc. v. Livingstone*, No. 3:15-cv-1001-J-32JRK, 2016 WL 7668486, at *7 (M.D. Fla. Apr. 20, 2016) (unpublished) (recommending $300 hourly rate for lawyers of unspecified experience rather than requested $475 in "a routine trademark infringement case [in Jacksonville], without novel or difficult issues and without any opposition"), *adopted by* 2016 WL 7668487 (M.D. Fla. May 20, 2016) (unpublished).

To the extent Ms. Borland requests a "premium rate" beyond $425 for the asserted reason that trademark litigation is a particularly difficult field of specialization recognized as meriting greater than average pay, *see* Doc. 13 at 14, I recommend declining to do so because the governing standard (similar services by lawyers of reasonably comparable skills, experience, and reputation, *see Norman*, 836 F.2d at 1299) already accounts for any heightened difficulty or required specialization.

A careful review of the billing record shows no hours that are excessive, redundant, or otherwise unnecessary. *See Hensley*, 461 U.S. at 434. The number of

hours (Ms. Borland, 29.9; Mr. McCachren, 3.2 hours; Mr. Rivera, 8 hours; Doc. 12 at 9) appears reasonable.

The lodestar is thus:

| Attorney | Rate | Hours | Total |
| --- | --- | --- | --- |
| Borland | $425 | 29.9 | $12,707.50 |
| McCachren | $425 | 3.2 | $1360 |
| Rivera | $225 | 8 | $1800 |
| **Total** | | **41.1** | **$15,867.50** |

The next step requires an adjustment of the lodestar based on factors not accounted for in reaching the lodestar amount. *See Perdue*, 559 U.S. at 553. Fuzion identifies no factor warranting adjustment of the lodestar, and none is apparent.

An award of **$15,867.50** in attorney's fees is warranted.

## H.    *Costs*

Federal Rule of Civil Procedure 54(d)(1) provides, "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees— should be allowed to the prevailing party." The rule "codifies a venerable presumption that prevailing parties are entitled to costs. Notwithstanding this presumption, the word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1172–73 (2013). A statute "provides otherwise" if it is contrary to the rule. *Id.* A statute providing that a court may award costs is not contrary to the Rule because it does not limit the court's discretion. *Id.*

Section 1920 limits a district court's discretion under Rule 54(d)(1) by listing the only costs a court may allow. *Maris Distr. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002). They are:

(1)     Fees of the clerk and marshal;

(2)     Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)     Fees and disbursements for printing and witnesses;

(4)     Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)     Docket fees under section 1923 of this title;

(6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Section 1920 reflects congressional policy to place "rigid controls on cost-shifting in federal courts." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987). "[A]s is evident from § 1920," costs are "limited to relatively minor, incidental expenses," and "almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012) (internal quotation marks omitted). A court may decline to allow costs in § 1920 but may not allow costs not in § 1920. *Crawford*, 483 U.S. at 442.

Besides § 1920, § 1117(a) provides that a prevailing plaintiff in a trademark-infringement action is entitled to "costs of the action." 15 U.S.C. § 1117(a). "Although [§] 1117(a) does not define what costs are recoverable, [c]ourts have interpreted it to mean those costs which are recoverable pursuant to 28 U.S.C. § 1920." *Coach Inc. v. Just A Boun, LLC*, No. 6:11-cv-797-ORL-18GJK, 2011 WL 6318966, at *4 (M.D. Fla. Nov. 8, 2011) (citing cases), *adopted by* 2011 WL 6328696 (M.D. Fla. Dec. 15, 2011) (unpublished).

Under "Fees of the … marshal," allowable costs include costs for private service of process in an amount that does not exceed what the United States Marshals Service charges. *EEOC v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). For in-person service, the Marshals Service charges $65 an hour "plus travel costs and any other out-of-pocket expenses." 28 C.F.R. § 0.114(a)(3). "Out-of-pocket expenses include … advertising, inventorying, storage, moving, insurance, guard hire, … and any other third-party expenditure incurred in executing process." 28 C.F.R. § 0.114(b). "If a party seeks to recover private service fees without providing evidence of what hourly rate the private server charged, how much time he spent trying to serve process, or other information needed to determine if his rate exceeded that charged by the Marshal, then the appropriate practice is to award the lesser of the amount that the party actually paid and the minimum charge of the U.S. Marshals." *Oleksy v. Gen. Elec. Co.*, No. 06-cv-1245, 2016 WL 7217725, at *3 (N.D. Ill. Dec. 12, 2016) (unpublished) (internal quotation marks omitted).

Shipping costs are not taxable. *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996); *accord Kobie v. Fithian*, No. 2:12-cv-98-FtM-29DNF, 2014 WL 2215752, at *2 (M.D. Fla. May 28, 2014) (unpublished) (declining to tax costs for "delivery service/Messenger delivery" because "[i]t is well settled that costs for 'shipping and handling' or postage costs are not recoverable expenses under § 1920").

Courts are split on whether fees for special admission are taxable. *Compare, e.g., Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013) (not taxable), *with Craftsmen Limousine, Inc. v. Ford Motor Co.*, 579 F.3d 894, 898 (8th Cir. 2009) (taxable), *and United States ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.*, 436 F.3d 726, 730 (7th Cir. 2006) (taxable). The Eleventh Circuit has not decided the issue. The majority of courts that have decided the issue are in the "not taxable" camp. *Oleksy*, 2016 WL 7217725, at * 2.

In *Kalitta*, 741 F.3d 955, the court provided the following rationale for holding admission fees are not taxable. The authority in § 1920(1) to tax "[f]ees of the clerk"

31

draws its meaning from 28 U.S.C. § 1914—a nearby section also under the Title 28 (Judiciary and Judicial Procedure), Part V (Procedure), Chapter 123 (Fees and Costs). *Kalitta*, 741 F.3d at 957. Section 1914 authorizes district courts to collect only a filing fee and "'such additional fees only as are prescribed by the Judicial Conference of the United States.'" *Id.* (quoting 28 U.S.C. § 1914(a), (b)). The Judicial Conference's fees schedule provides a fee "'[f]or original admission of attorneys to practice'" but does not include fees for pro hac vice admission. *Id.* at 957−58 (quoting 28 U.S.C. § 1914, District Court Miscellaneous Fee Schedule). "[O]riginal admission" refers to "the permanent admission of attorneys to the district court's bar" and not to "the temporary and limited leave to practice before the district court granted by pro hac vice status." *Id.* at 958. "[B]ecause § 1914(b) allows a clerk to collect only those fees prescribed by the Judicial Conference, and the Judicial Conference has not specifically provided for pro hac vice fees, … § 1920(1) does not allow for an award of pro hac vice fees as taxable costs."[8] *Id.*

The court continued, "This conclusion also comports with the Supreme Court's recent statements emphasizing that 'taxable costs are limited by statute and are modest in scope.'" *Id.* (quoting *Taniguchi*, 132 S. Ct. at 2006). "Given the Court's close reading of the statute and emphasis that '[t]axable costs are limited to relatively minor, incidental expenses,' and, further, that 'costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit,'" § 1920 is construed narrowly. *Id.* (quoting *Taniguchi*, 132 S. Ct. at 2006). The court recognized that *Craftsmen*, 579 F.3d 894, and *Gear*, 436 F.3d 726, reached contrary holdings but was unpersuaded because they preceded the Supreme Court's recent statements on

---

[8]The court's conclusion that pro hac vice fees are not considered part of the fees for "original admission" authorized by the Judicial Conference under § 1914 appears to be supported by the Judicial Conference's policy clarification that "the attorney admission fee prescribed in … the District Court Miscellaneous Fee Schedule does not apply to *pro hac vice* requests" and "courts may charge, at their option, a local fee … for *pro hac vice* admissions." *See* Judicial Conference of the United States, *Report of the Proceedings of the Judicial Conference of the United States, September 23, 1997*, *available at* http://www.uscourts.gov/sites/default/files/1997-09_0.pdf (last visited July 28, 2017).

the narrow construction of § 1920 and provide no "clear explanation of their reasons." *Id.* Concluding "the better course is to hew closely to the statute's language, scheme, and context, recognizing that § 1920 is narrow, limited, and modest in scope," the court reversed the award of costs for pro hac vice admission to the prevailing party's counsel. *Id.*

Here, as the prevailing party, Fuzion is entitled to costs. Of the costs requested ($692.61, comprising $18.86 for "Express Delivery Services," $550 for "Fees of the Clerk," and $123.75 for "Fees of the Marshal," Doc. 12 at 10), Fuzion is entitled to $465, comprising $400 and $65 for "Fees of the clerk and marshal" respectively. *See* 28 U.S.C. § 1920(1) (quoted). Because shipping costs are not taxable, *see Duckworth, 97 F.3d at 1399*, Fuzion is not entitled to $18.86 for delivery services. Under the persuasive reasoning in *Kalitta*, Fuzion is not entitled to the $150 for pro hac vice fees (presumably within the $550 request for "Fees of the Clerk"; see the docket text accompanying Doc. 1 and the docket entry following Doc. 9 indicating Fuzion paid $400 filing fee and $150 pro hac vice fee.) Because Fuzion has presented no evidence of time spent, travel costs, or any other out-of-pocket expenses for service of process, *see generally* Docs. 12, 13, it is entitled to no more than the $65 an hour the Marshals Service would charge for in-person service.

## III.   Recommendation

I recommend:

(A)   granting in part Fuzion Vapor, LLC's motion for default judgment, Doc. 12;

(B)   dismissing the claim for dilution under Fla. Stat. § 495.151 (count five);

(C)   directing the Clerk of Court to enter final judgment in favor of Fuzion Vapor, LLC, and against Fumizer, LLC, on the claims for infringement in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (count one), unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (count two), common law

infringement (count three), and common law unfair competition (count four) as follows:

Fuzion Vapor, LLC, shall recover against Fumizer, LLC, $15,867.50 in attorney's fees and $465 in costs. Post-judgment interest will accrue at the statutory rate in 28 U.S.C. § 1961.

Fumizer, LLC; its affiliated entities, servants, agents, representatives, employees, and successors; and all other persons in active concert or participation with any or all of them are permanently enjoined from:

1.  using the FUMI VAPOR, FUMIVAPOR, and FV marks, the FV design mark, the Fumi Vapor trade name, fumivapor.com, or any other colorable imitation of those marks or Fuzion Vapor, LLC's FUZION VAPOR mark or FV design mark, in advertising, promoting, merchandising, distributing, offering for sale, and selling electronic-cigarette products and services and any products or services relating to electronic cigarettes or their use;

2.  expressly or impliedly representing to customers, potential customers, or the public that any electronic-cigarette products and services or other products or services related to electronic cigarettes or their use are affiliated in any way with Fuzion Vapor, LLC;

3.  representing by words or conduct that Fumizer, LLC's electronic-cigarette products and services or any products or services relating to electronic cigarettes or their use, are authorized by, sponsored by, endorsed by, or otherwise connected with Fuzion Vapor, LLC; and

4.  doing any other acts calculated or likely to cause confusion or mistake in the mind of the public or lead consumers into the belief that Fumizer, LLC's electronic-cigarette products and services and any other products or services relating to electronic cigarettes or their use are authorized, sponsored, licensed, endorsed, or promoted by Fuzion Vapor, LLC, or are otherwise affiliated or connected with Fuzion Vapor, LLC.

Fumizer, LLC, must cancel the domain name "fumivapor.com";

(D)     directing Fuzion Vapor, LLC, to serve a copy of the final order and judgment on Fumizer, LLC, who has 30 days from the service date to comply with the requirements of the permanent injunction, failing which Fuzion Vapor, LLC, may file a motion to enforce the permanent injunction, supported by evidence of service on Fumizer, LLC, and evidence of violation of the injunction; and

(E)     directing the Clerk of Court to close the file after entering judgment.[9]

**Entered** in Jacksonville, Florida, on July 28, 2017.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:      Counsel of Record

Fumizer, LLC
c/o Eduard Kirakosyan, Registered Agent
7308 Laurel Canyon Blvd.
North Hollywood, CA 91605-3710

---

[9]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.